# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Sean Waggoner, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 970-819-3229 ("the SUBJECT PHONE") that is stored at premises controlled by Verizon, a wireless telephone service provider with address: Verizon Wireless Attn: Custodian of Records 180 Washington Valley Road Bedminster, NJ 07921.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon Corporation to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the United States Department of the Interior, Bureau of Land Management (BLM) Office of Law Enforcement and Security, presently assigned to Region 4 in Lakewood, Colorado.  I have been a BLM Federal Law Enforcement Officer for approximately 9 years, having worked in this capacity since 2009.  Prior to my federal law enforcement experience, I was a State law enforcement officer with Florida Fish and Wildlife Conservation Commission from 2006 to 2009.  During my time as a Law Enforcement Officer and Special Agent, I have investigated a variety of crimes on federally owned and managed lands.  These crimes include, but are not limited to, theft of government property, commercial

operations in violation of federal and state laws, illegal take of wildlife and natural resources, drug-related crimes, and illegal possession of firearms.  I have attended over 2,000 hours of law enforcement training, including the Land Management Police Training Program and the Department of the Interior's Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  My experience includes using search warrants to gather electronic evidence.  As a BLM Special Agent, I am authorized by Title 43 United States Code Section 1733(c)(2) to apply for and execute federal search warrants, make arrests, and enforce all applicable federal laws.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violation of Title 18, United States Code Section 641, Theft of Property of the United States have been committed by Jayce Bradley PETERSON and, potentially, other conspirators.  There is also probable cause to search the information described in Attachment A for evidence of this crime and fruits of this crime, as described in Attachment B.  Attachments A and B are incorporated herein by reference.

## JURISDICTION AND STATUTES

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Sections 2711 and 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.  18 U.S.C. § 2711(3)(A)(i).

6. Title 18, United States Code, Section 641 provides:

a. Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

b. Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

c. Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

## PROBABLE CAUSE THAT PETERSON IS INVOLVED IN THE FEE TUBE THEFTS

7. From July 8, 2018, to October 10, 2018, the same modus operandi was utilized to melt the padlock off fee tubes and remove the contents. Fee tubes are used to collect and store cash deposits from members of the public that wish to utilize a camping space or boat ramp. The fees of $6.00 to $15.00 per night are advertised on a large information sign and users are provided an empty envelope to place their cash into and then place the sealed envelope in the fee tube. These thefts spanned two (2) federal jurisdictions—on property administered by the United States Forest Service (USFS) and BLM—and one (1) state jurisdiction—on property administered by the Colorado Department of Parks and Wildlife (CPW). While it is impossible

to know exactly how much the suspect was able to remove, an approximation was extrapolated by using the amount of fees collected in the weeks leading up to the thefts as well as the weeks following the thefts.

8. In total 36 separate fee tubes have been targeted. USFS thefts account for $17,200, BLM thefts account for approximately $4000 and CPW thefts account for $4206.02.

9. The modus operandi for the thefts was to use a cutting torch to melt the lock that was installed and remove the entire insert. On at least two separate occasions, photographs were taken of the suspect vehicle, and in one occasion a suspect was photographed using a torch to remove the fee tube contents.

    a. On September 10, 2018, at approximately 1:03 AM, trail cameras installed at Vaughan Lake (USFS) captured images of a white male using a cutting torch to cut the locks and steal the contents.

    b. In examining the photo, investigators noted several particularities that could identify the suspect's vehicle. These include the following: light colored or white Chevrolet Silverado with aftermarket rims and larger tires, two tone side view mirrors and paint matching door handles, and missing right front mud-flap. Additionally, an aftermarket front bumper can be seen in the photograph.

10. On September 30, 2018, a vehicle with the same particularities noted above was observed and photographed while launching a boat at Steamboat Lake State Park. Investigators noted that the truck had the same tires and wheels, body colored-keyed white matching door handles and missing right front mud-flap.

11.     Investigators queried vehicle records to determine the owner of the above vehicle. Those records identified Jayce Bradley PETERSON as the registered owner. I compared the DMV photograph of PETERSON to the photograph of the suspect involved in the fee tube theft. Based on that comparison, I believe PETERSON is the suspect depicted in the photographs of the fee tube theft.

12.     On October 1, 2018, PETERSON was arrested on Colorado State charges related to controlled substance violations, as well as an outstanding arrest warrant from Wyoming by Black Hawk Police Department. During PETERSON's booking, an iPhone was observed and PETERSON told arresting officers from Black Hawk Police Department his cell phone number is (970) 819-3229. A law enforcement database check conducted on October 9, 2018, reveals that phone number (970) 819-3229 is registered to Jayce PETERSON from 2004 to current and also indicates the phone number is serviced by Verizon Corporation.

13.     On October 19, 2018 I interviewed Jayce PETERSON and during this interview he admitted he was responsible for numerous fee tube thefts in Colorado including State Bridge, Radium, Vaughn Lake and many others. PETERSON further stated he used a cutting torch to cut locks from fee tubes at night to avoid detection. PETERSON told me the location of the cutting torch and game cameras he removed from Campgrounds and drew a map to the location of the torch as he had hidden the torch in the woods to prevent law enforcement from finding it.

14.     Although PETERSON admitted to conducting the thefts alone, agents are seeking the information in Attachment B to corroborate PETERSON's admissions and verify that he was acting alone.

## PROBABLE CAUSE THAT VERIZON CORPORATION POSSESSES EVIDENCE

15. In my training and experience, I have learned that VERIZON Corporation is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16. Based on my training and experience, I know that VERIZON Corporation can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as VERIZON Corporation typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17. Based on my training and experience, I know that wireless providers such as VERIZON Corporation typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account

number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as VERIZON Corporation typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims. Additionally, historic location data can be used to cross reference places and times of known crimes with places and times of the SUBJECT PHONE.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19. I further request that the Court direct VERIZON Corporation to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on VERIZON Corporation, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets

an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

I, Special Agent Sean Waggoner, being duly sworn according to law, hereby state that the facts provided in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

                                    Respectfully submitted,

                                    *s/ Sean Waggoner*
                                    Sean Waggoner
                                    Special Agent
                                    U.S. Bureau of Land Management

Subscribed, attested to, and acknowledged by reliable electronic means on this 25 day of October, 2018.

_____
Gordon P. Gallagher
United States Magistrate Judge
United States District Court, District of Colorado

**Reviewed and submitted by Jeremy Chaffin, Assistant United States Attorney.**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with cellular phone number **(970) 819-3229** that is stored at premises owned, maintained, controlled, or operated by VERIZON Corporation, a wireless provider with contact information:

**Verizon Wireless**
**Attn: Custodian of Records**
**180 Washington Valley Road**
**Bedminster, NJ 07921**

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

1. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **July 1 to October 30, 2018**

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.      the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii.      All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period described above.

c. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

d. All existing printouts from original storage of all of the text messages described above;

e. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

f. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

Case 1:18-sw-06168-GPG   Document 1-1   Filed 10/29/18   USDC Colorado   Page 12 of 13

g. All records pertaining to communications between Provider and any person regarding the account or identifier, including contacts with support services and records of actions taken.

h. The Provider shall deliver the information set forth above within 7 days of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Special Agent Sean Waggoner
>
> BLM OLES R4
>
> 2850 Youngfield ST
>
> Lakewood, CO 80215

## II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 641, involving Jayce Bradley PETERSON, since July 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Thefts from fee tubes located on lands administered by the U.S. Forest Service and the Bureau of Land Management;

b. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

4

5

        d.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).